IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:00CR161 |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| LUIS YAIR GUTIERREZ-LOPEZ, ) | |
| ) | |
| Defendant, ) | |

This matter is before the court on the "Motion to Vacate Sentence and Conviction Pursuant to Title 28 U.S.C. § 2255" (§ 2255 motion), Filing No. 40, filed by the defendant, Luis Yair Gutierrez-Lopez. The government has filed an answer, Filing No. 44, to the § 2255 motion.

The one-count indictment in this case charges that "On or about the 21st day of May, 2000, in the District of Nebraska, Luis Yair Gutierrez-Lopez, an alien who had been denied admission, excluded, deported or removed or who had deported the United States while an order of exclusion, deportation or removal was outstanding, knowingly and unlawfully entered the United States and was found in the District of Nebraska, without first having obtained consent from the United States Attorney General to reapply for admission into the United States, in violation of Title 8, United States Code, Section 1326(a)." On June 27, 2000, the defendant pled guilty to the one-count indictment charging him with reentry after deportation. On November 8, 2000, the court sentenced the defendant to 78 months' imprisonment, followed by three years of supervised release. Filing Nos. 1, 10.

The defendant filed a notice of appeal on November 20, 2000. Filing No. 21. On direct appeal, defendant argued his sentence was enhanced by a prior aggravated felony, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, the United States

Court of Appeals for the Eighth Circuit affirmed the judgment of the district court.  This is the defendant's first motion pursuant to 28 U.S.C. § 2255.

## § 2255 CLAIMS

In his § 2255 petition and accompanying brief, the defendant raised the following claims: (1) defendant's counsel rendered ineffective assistance of counsel in failing to request a downward departure pursuant to U.S.S.G. §5K2.0; and (2) that the underlying deportation proceeding was constitutionally deficient, thereby making the underlying conviction under 8 U.S.C. §1326(a) invalid.

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of trial counsel are properly raised in proceedings under 28 U.S.C. § 2255.  *See,* e.g., *United States v. Smith*, 62 F.3d 1073, 1078 (8th Cir. 1995).  "A claim of ineffective assistance of counsel should normally not be part of a direct appeal but should be raised in collateral proceedings under 28 U.S.C. § 2255 because such a claim usually cannot be advanced without development of the record."  *Smith*, 62 F.3d at1078.  *Accord United States v. Guzman-Landeros*, 207 F.3d 1034, 1034 (8th Cir. 2000);  *United States v. Mitchell*, 136 F.3d 1192, 1193 (8th Cir. 1998).

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense."  *U.S. Const. amend. VI.*  "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation."  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002), *citing Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).  *See also Bell v. Cone*, 535 U.S. 685, 695 (2002):

2

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," [*Strickland*], 466 U.S., at 688 . . . ; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694. . . . Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," *id.*, at 687 . . . , and the sentence or conviction should stand.

*Bell,* 535 U.S. at 695.

"The *Strickland* test has two parts: whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test. . . . Under the first part of the *Strickland* test, we consider counsel's performance objectively and gauge whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances'. . . . We look at counsel's challenged conduct at the time of his representation of the defendant and we avoid making judgments based on hindsight." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000), quoting *United States v. Flynn*, 87 F.3d 996, 1000 (8th Cir. 1996).

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making

3

that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

*Strickland* requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.*

To meet the prejudice prong of the test, the defendant must show a reasonable probability that absent his counsel's deficient conduct, the outcome of the defendant's case would have been altered. See *Mickens*, 535 U.S. at 165, *citing Strickland*, 466 U.S. at 694. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens* at 166, *citing Strickland* at 694. More

specifically, "[t]o show prejudice, [the defendant] must show a reasonable probability that absent the alleged errors of counsel he would have been found not guilty." *United States v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As explained in *Strickland*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The ultimate focus of the *Strickland* inquiry is always on the "fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

The defendant claims his counsel to be ineffective for failing to request a downward departure pursuant to U.S.S.G. § 5K2.0. Under 18 U.S.C. § 3553(b),[1]

> the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

The Supreme Court established steps to determine if a case is taken into consideration by the guidelines when a particular factor is not explicitly mentioned:

> if special factor is unmentioned in Guidelines, court must, after considering structure and theory of both relevant individual guidelines and Guidelines taken as whole, decide whether it is sufficient to take case out of Guideline's heartland; court must bear in mind Sentencing Commission's expectation that departures based on grounds not mentioned in Guidelines will be highly infrequent.

*Koon v. United States*, 518 U.S. 81, 82 (1996).

---

[1] The court notes for the record that *United States v. Booker,* 125 S. Ct. 738 (2005), finds guidelines to be advisory, although "the 'new rule' announced in *Booker* does not apply to criminal convictions that become final before the rule was announced and thus does not benefit movants in collateral proceedings." *Lenford Never Misses a Shot v. United States of America*, No. 05-1233, slip op. at 4 (8th Cir. 2005).

5

The defendant has failed to establish that the circumstances outside the "heartland of cases" is sufficient to justify a departure under § 5K2.0. Defendant contends that he has family ties in the United States. The fact that the defendant had family ties in the United States is not significant enough to render the defendant's case extraordinary. As mentioned by the Supreme Court, departures of cases outside of the Guideline's heartland will be "highly infrequent." *Id.* at 82. Further, defendant has a significant criminal history in any event. In this case, the facts clearly state that the defendant has failed to establish an extraordinary condition in which his case shall be considered outside of the Guideline's heartland.

## DEPORTATION PROCEEDING CONSTITUTIONALLY DEFICIENT

On June 21, 2000, the defendant became indicted and charged with illegal reentry following a deportation, in violation of 8 U.S.C. §1326. The defendant alleges that the Supreme Court found a clear violation of due process in the case where an individual is deported after implementation of the 1996 reform contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001).

> "Before the effective dates of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 212(c) of the Immigration and Nationality Act of 1952 was interpreted to give the Attorney General broad discretion to waive deportation of resident aliens. As relevant here, the large class of aliens depending on § 212(c) relief was reduced in 1996 by § 401 of AEDPA, which identified a broad set of offenses for which convictions would preclude such relief; and by IIRIRA, which repealed § 212(c) and replaced it with a new section excluding from the class anyone 'convicted of an aggravated felony.'"

*I.N.S. v. St. Cyr*, 533 U.S. 289, 289 (2001), 8 U.S.C. § 1229b(a)(3).

The defendant believes the 1996 reforms eliminated the Attorney General's authority to permit waiver of deportation. The defendant claims that at his deportation hearing, he believed he could not be eligible for any form of relief from deportation and thereby waived his deportation. Defendant alleged that had he been aware of his rights as set forth by the Supreme Court in the *St. Cyr* decision, he would have raised those rights under Title 8 U.S.C. §§ 212(c), 212(h) or 244(a) of the Immigration and Naturalization Act.

The defendant became convicted of first degree robbery on or about December 2, 1999, and deported on February 17, 2000. IIRIRA had been in effect for well over three years at the time the defendant was arrested and deported. *St. Cyr* is only applicable to those cases where the defendant became sentenced pre-IIRIRA and AEDPA and deported post-IIRIRA and AEDPA  Thus, the court concludes the defendant's claim based on *St. Cyr.* is without merit and is denied, as is his claim of ineffective assistance of counsel.

THEREFORE, IT IS ORDERED:

1. That the defendant's "Motion to Vacate Sentence and Conviction Pursuant to Title 28 U.S.C. § 2255," Filing No. 40, is denied.

2. A separate judgment of dismissal with prejudice will be filed in accordance with this Memorandum and Order

DATED this 18th day of July, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge